IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARY CLAIRE LASALLE, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 10-1096 |
| | ) Judge Donetta W. Ambrose |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| Defendant. | ) |

# MEMORANDUM OPINION

## I. Synopsis

This matter comes before the Court on the parties' cross-motions for summary judgment, which have been filed pursuant to Federal Rule of Civil Procedure 56. Doc. Nos. 8 & 14. The Court has jurisdiction in this case pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons that follow, the Defendant's Motion for Summary Judgment (Document No. 14) will be denied, the Plaintiff's Motion for Summary Judgment (Document No. 8) will be granted and the administrative decision of the Commissioner of Social Security will be reversed and remanded for further administrative proceedings.

## II. Procedural History

Plaintiff, Mary Claire LaSalle ("LaSalle") filed applications for Disability Insurance Benefits ("DIB") and Social Security Disability ("SSI") under Titles II and XVI of the Social Security Act ("Act") [42 U.S.C. §§ 401-433, 1381-1382f] on February 5, 2008, alleging disability as of January 1, 1997. Record of *LaSalle v. Astrue*, ("R.") at 120-130. LaSalle's alleged disability onset date was subsequently amended to October 25, 2007, to reflect a previous

ALJ decision. R. at 13. The applications were administratively denied on May 1, 2008. R. at 55. LaSalle responded by filing a timely request for an administrative hearing. R. at 103-04.

On September 1, 2009, a hearing was held in Pittsburgh, Pennsylvania, before Administrative Law Judge William E. Kenworthy (the "ALJ"). R. at 28-51. LaSalle, who was represented by counsel, appeared and testified. R. at 31-46. Testimony was also taken from Dr. William Reid, an impartial vocational expert (the "VE"). R. at 47-50.

In a decision dated September 11, 2009, the ALJ determined that LaSalle was not "disabled" within the meaning of the Act. R. at 13-20. The Appeals Council denied LaSalle's request for review on June 30, 2010, thereby making the ALJ's decision the final decision of the Commissioner in this case. R. at 1-5. LaSalle commenced the present action on August 20, 2010, seeking judicial review of the Commissioner's decision. Doc. No. 1. LaSalle and the Commissioner filed motions for summary judgment on January 8, 2011, and April 8, 2011, respectively. Doc. Nos. 8 & 14. These motions are the subject of this memorandum opinion.

### III. Standard of Review

This Court's review is limited to determining whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-1191(3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal

2

quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health & Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. *Stewart v. Sec'y of Health, Educ. & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983). The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively delegated rule making authority, has promulgated a five-step sequential evaluation process for the purpose

of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court recently summarized this process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity."[20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find nondisability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (footnotes omitted).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In *Sec. & Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194 (1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

*Chenery Corp.*, 332 U.S. at 196.

The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. *Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision.

## IV. Discussion

In his decision, the ALJ determined that LaSalle had not engaged in substantial gainful activity since October 25, 2007, her amended alleged disability onset date. R. at 15. LaSalle was found to be suffering from major depression and post-traumatic stress disorder. Id. Although these impairments were deemed to be "severe" within the meaning of 20 C.F.R. §§ 404.1520(c) and 416.920(c), it was determined that they did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listing of Impairments" or, with respect to a single impairment, a "Listed Impairment" or "Listing"). R. at 15-16.

In accordance with 20 C.F.R. §§ 404.1545 and 416.945, the ALJ assessed LaSalle's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels, but with the following non-exertional limitations: limited to simple, repetitive tasks that do not require dealing with the general public, maintaining close interaction and co-operation with co-workers or meeting the demands of a rapid production pace or similar sources of a high-level of work stress.

R. at 17.

LaSalle was born on January 3, 1979, making her twenty-eight years of age as of her alleged disability onset date. R. at 18. She was classified as a "younger individual" under the Commissioner's regulations. R. at 18; 20 C.F.R. §§ 404.1563, 416.963. LaSalle had a limited education and the ability to communicate in English. 20 C.F.R. §§ 404.1564, 416.964.

Given the applicable RFC and vocational assessments, the ALJ found that LaSalle was unable to perform her past relevant work as a clerk, soap maker, and flower delivery person. R.

5

at 19. Nevertheless, the ALJ concluded that LaSalle could perform the requirements of the representative occupations of stalker (sic)/checker, shipping clerk, or assembler. R. at 19. The VE's testimony established that these jobs exist in the national economy for the purposes of 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B). R. at 48-49.

In support of her motion for summary judgment, LaSalle argues that the ALJ failed to adequately evaluate relevant evidence of medical record, including his complete failure to address one of her consultative examinations and his insufficient discussion of her treatment records from Western Psychiatric Institute and Clinic ("WPIC") and low Global Assessment of Functioning scores ("GAF"). Doc. No. 9. The Commissioner argues that the ALJ's RFC analysis is supported by the relevant medical evidence and therefore, that the ALJ's decision is supported by substantial evidence. Doc. No. 15.

An ALJ has the duty to evaluate all relevant evidence in the record. *Fargnoli v. Halter*, 247 F.3d 34, 41 (3d Cir. 2001); *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000); *Cotter v. Harris*, 642 F.2d 700, 704 (3d. Cir. 1981). An ALJ may not make speculative inferences from medical evidence and cannot reject evidence for no reason or for the wrong reason. *Smith v. Califano*, 637 F.2d 968, 972 (3d Cir. 1981), *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505 (3d. Cir. 2009). While the ALJ may properly accept some parts of the medical evidence, and reject other parts, he must consider all the evidence and give some cogent reason for discounting the evidence he rejects, particularly when he rejects evidence that suggests a contrary disposition. *Adorno*, 40 F.3d at 48 (citing *Brewster v. Heckler*, 786 F.2d 581, 585 (3d Cir. 1986)); *Stewart*, 714 F.2d at 290.

Therefore, the ALJ must explain the evidence supporting his findings and the reasons for discounting the evidence he rejects, so that the reviewing court can determine if significant

probative evidence was improperly rejected or simply ignored. *Burnett*, 220 F.3d at 121; *Cotter*, 642 F.2d at 705-07. Such analysis is required because "unless the Secretary has analyzed all evidence and sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" *Cotter*, 642 F.2d at 705.

Here, the ALJ's entire discussion of LaSalle's medical record to support his RFC analysis is as follows:

> In terms of the claimant's alleged bad days, three or four days out of seven, the treatment records from WPIC contain no record of any such complaint. Even if it were assumed that there are such days when she does not want to do anything, it is considered that she could nevertheless show up for work and perform assigned tasks if she were to be employed [and] needed to do so.
>
> As for opinion evidence, consideration has been given to an opinion expressed by consultative examiner, Linda Rockey, that the claimant is likely to have difficulty getting to and from work consistently on a daily basis, interacting effectively with others, comprehending and completing complex work tasks, meeting deadlines and adapting to changes in a work environment. However, those limitations are not explained or justified by any of the objective narrative in the report. I concur in the opinion of John Rohar, PhD., who reviewed the evidence at the state agency level and who is experienced in the evaluation of mental impairments in the context of the Social Security regulations. He concluded that Dr. Rockey appears to have relied heavily on the claimant's subjective complaints in that single interview and that Dr. Rockey's opinion is an overestimate of the severity of the claimant's limitations. Dr. Rohar concluded that the claimant is capable of carrying out short and simple instructions and that she could function in production oriented jobs requiring little independent decision-making.

R. 18.

The ALJ's cursory and incomplete discussion of the relevant medical evidence does not allow this Court to conduct a meaningful judicial review to determine if the ALJ's decision is supported by substantial evidence. The ALJ did not mention or discuss LaSalle's September 25, 2007, consultative examination by Chantal Deines, Psy.D., which documented her opinion that

7

LaSalle had significant functional limitations. R. at 237-49. Based upon her examination, Dr. Deines concluded that LaSalle suffered from bipolar II disorder and chronic post-traumatic stress disorder. Id. Dr. Deines noted that these mental impairments caused LaSalle to be limited in several areas, including: marked limitations in activities of daily living, significant concentration problems requiring frequent reminders, and marked impairment in LaSalle's ability to respond appropriately to changes and work pressures in a routine work setting. R. at 245, 246, 248.

The ALJ's failure to even mention Dr. Deines' report, which was relevant to LaSalle's disability and included in her medical record, does not allow this Court to determine if Dr. Deines' consultative examination was considered by the ALJ in formulating her RFC analysis. Accordingly, the ALJ did not perform his duty to evaluate all relevant evidence in the record and a meaningful judicial review is not possible. *See Fargnoli*, 247 F.3d at 41.

Furthermore, the ALJ did not adequately address LaSalle's mental health treatment. The ALJ's sole mention of 64 pages of medical treatment records from WPIC (R. 282-298, 375-420) is based only in terms of LaSalle's testimony that she had "bad days three or four days out of seven." R. 18. The ALJ does not address any of the functional limitations identified in LaSalle's WPIC treatment notes including poor concentration, difficulty with comprehension, fatigue, and paranoia. R. 282, 287, 290, 294, 381, 382, 393, 394, 395, 405, 410, 411, 416, 418, 419. Therefore, the ALJ neglected to meet his obligation to consider and discuss all of the medical evidence. *See Adorno*, 40 F.3d at 48.

The Commissioner's argument that the ALJ need not undertake an "exhaustive discussion of the record", is not applicable where, as here, the ALJ's discussion does not afford the chance for meaningful judicial review. Doc. No. 15, 12, citing *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). Accordingly, because of the sparse discussion of the record, this Court is

8

unable to determine whether the ALJ considered and evaluated the complete medical evidence in the record consistent with his responsibilities under the regulations and case law. *See Fargnoli*, 247 F.3d at 34.

*GAF Scores*

LaSalle also contends that the ALJ's decision is not supported by substantial evidence because the ALJ failed to address her GAF scores documented in the record.[1] Doc. No. 9, 12. LaSalle's record includes documentation of GAF scores of 50 during treatment at WPIC.[2] R. at 290, 295, 383, 396, 419.

While GAF scores do not correlate to the severity requirements of the Act (66 Fed. Reg. 50746, 50764-65 (2000)), GAF scores remain the scale used by mental health professionals to assess current treatment needs and provide a prognosis. *Colon v. Barnhart*, 424 F.Supp. 2d 805, 812 (E.D. Pa. March 24, 2006). Therefore, although GAF scores are not dispositive, they constitute medical evidence, accepted and relied on by a medical source, and must be addressed by the ALJ. *Id.* The ALJ must demonstrate that he seriously considered and weighed the importance of the GAF scores. *Colon*, 424 F. Supp. 2d at 813; *Span v. Barnhart*, No. 02-7399, 2004 WL 1535768, at *4, *6, *7 (E.D. Pa. May 21, 2004). If the ALJ discounts GAF scores, he must specify his reasons for discounting this evidence. *Dougherty v. Barnhart*, 2006 WL

---

[1] A GAF score is used to report an individual's overall level of functioning with respect to psychological, social, and occupational functioning. The GAF scale ranges from the lowest score of 1 to 100, the highest score possible. The GAF score considers "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness. Diagnostic and Statistical Manual of Mental Disorders, ("DSM-IVR") 34 (4th ed. 2000).

[2] A GAF score of 41-50 indicates "some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school)." DSM-IVR, 32.

9

2433792, *10 (E.D.Pa. Aug. 21, 2006); *Span*, 2004 WL 1535768, at *7 (citing *Adorno*, 40 F.3d at 48); *See Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505-06 (3d. Cir. 2009).

Furthermore, failure to discuss a GAF score that supports serious impairments in social or occupational functioning requires remand. *See Lanza v. Astrue*, No. 08-301, 2009 WL 1147911, at *7 (W.D. Pa. Apr. 28, 2009) (Ambrose, C.J.) (remand required when ALJ failed to specifically discuss GAF scores assigned by physicians whose reports the ALJ discussed); *See also Holmes v. Barnhart*, No. 04-5765, 2007 WL 951637, at *11 (E.D. Pa. Mar. 26, 2007) (remand required because of ALJ's failure to acknowledge claimant's GAF score of 50).

Here, the ALJ's decision does not address LaSalle's low GAF scores or thoroughly discuss the treatment she received at WPIC. Indeed, the ALJ did not mention any of LaSalle's treatment at WPIC except for his notation that Dr. Reddy's working diagnoses have been major depression and post-traumatic stress disorder. R. at 18. The ALJ's failure to mention any of LaSalle's GAF scores coupled with his incomplete discussion of the record does not permit a meaningful review of his decision. While the ALJ provided a brief explanation regarding the evidence he relied upon, he simply failed to disclose any reasons for discounting other contrary evidence. *See Span*, 2004 WL 1535768, at *8.

Because the ALJ did not discuss plaintiff's low GAF scores or how the scores factored into his decision, the ALJ did not properly evaluate all of the relevant medical evidence. *See e.g. Watson v. Astrue*, 2009 WL 678717 *6 (E.D.Pa. March 13, 2009). By failing to address the GAF scores and therefore failing to give specific reasons for accepting or rejecting that evidence, the ALJ's decision must be remanded for further consideration.

*LaSalle's Other Arguments*

LaSalle also argues that the ALJ's hypothetical question to the VE did not include all of her functional limitations. Doc. No. 9, 18-20. Here, the ALJ asked the VE to assume an individual with the claimant's age, education, and work experience, and assume that she would be capable of performing work at any exertional level, having no established exertional limitations who would be limited to work of a simple and repetitive nature, that would not require dealing with the general public, maintaining close interaction and cooperation with co-workers, or meeting the demands of a rapid production pace or similar sources of a high level of work stress. R. at 48. LaSalle contends that the VE's hypothetical question fails to reflect all of her impairments which are supported by the record. Doc. No. 9, 19.

Because LaSalle's case will be remanded for the ALJ's failure to consider and analyze all relevant medical evidence regarding her mental impairments, including her low GAF scores, it is unnecessary to examine LaSalle's additional claims. A remand may produce different results on these claims, making discussion of them moot. *See Steininger v. Barnhart*, No. 04-5383, 2005 WL 2077375, at *13 (E.D. Pa. Aug. 24, 2005). ("Having concluded for the above stated reasons that remand to the ALJ for a new evidentiary hearing is appropriate, the Court will not address Plaintiff's other arguments for remand, as the ALJ's findings may be revised in any decision issued following the new hearing."), *Nieves v. Astrue*, No. 08-5178, 2010 WL 629831, at *24 (E.D. Pa. 2010).

The only remaining question is whether a judicially-ordered award of benefits is proper, or whether the case should be remanded to the Commissioner for further administrative proceedings. An immediate award of benefits is appropriate only when the evidentiary record has been fully developed, and when the evidence as a whole clearly points in favor of a finding

that the claimant is statutorily disabled. *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000). That standard is not met here. As noted, the record contains conflicting medical opinion evidence of LaSalle's alleged mental impairments and resulting limitations. Therefore, because further development of the record is necessary, the case will be remanded to the Commissioner for further administrative proceedings consistent with the foregoing opinion.

## V. Conclusion

For all of the preceding reasons, this case will be remanded for further administrative proceedings. If a more recent consultative examination is necessary or appropriate, one should be ordered by the ALJ. *See Boyd v. Sullivan*, 960 F.2d 733, 736 (8th Cir. 1992) ("[i]t is reversible error for an ALJ not to order a consultative examination [if] such an evaluation is necessary for him to make an informed decision.") (citations and internal quotations omitted). LaSalle also should be permitted to supplement the medical record if she wishes.

Once additional medical evidence has been gathered, if necessary, and with or without a hearing, the ALJ shall revisit the disability determination and determine whether LaSalle's mental impairments preclude her from engaging in substantial gainful activity. Any finding must be supported by substantial evidence.

Accordingly, the Commissioner's Motion for Summary Judgment (Doc. No. 14) will be denied and LaSalle's Motion for Summary Judgment (Doc. No. 8) will be granted. The case will be remanded to the Commissioner for further administrative proceedings.

An appropriate order follows.

BY THE COURT:

_____
Donetta W. Ambrose,
United States District Judge

cc: All counsel of record

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MARY C. LASALLE,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Civil Action No. 10-1096
Judge Donetta W. Ambrose

## ORDER OF COURT

AND NOW, this 14th day of Apr., 2011, this matter coming before the Court on the Motion for Summary Judgment filed by the Plaintiff (Doc. No. 8) and the Motion for Summary Judgment filed by the Defendant (Doc. No. 14), IT IS HEREBY ORDERED that the Defendant's Motion for Summary Judgment is **DENIED**, and that the Plaintiff's Motion for Summary Judgment is **GRANTED**.

In accordance with the fourth sentence of 42 U.S.C. § 405(g), the decision of the Commissioner of Social Security is hereby **VACATED** and the case is remanded to him for further proceedings consistent with the foregoing memorandum opinion.

The Clerk of Court shall mark this case closed.

BY THE COURT:

*Donetta W. Ambrose*
Donetta W. Ambrose,
United States District Judge

cc:     All counsel of record